UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| NAOMI TEARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| AMERICAN LEGAL RECOVERY, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

<u>PLAINTIFF'S COMPLAINT</u>

Plaintiff, NAOMI TEARE ("Plaintiff"), through her attorney, SHIELD LAW GROUP, alleges the following against Defendant, AMERICAN LEGAL RECOVERY, LLC ("Defendant"):

INTRODUCTION

1. Plaintiff's Complaint is based on the Fair Debt Collection Practices Act 15 U.S.C. § 1692, et seq. ("FDCPA").

JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §1331 and 15 U.S.C. §1692k (FDCPA).

3. Jurisdiction of this court arises pursuant to 15 U.S.C. 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

4. Venue and personal jurisdiction in this District are proper because Defendant does or transacts business within this District, and a material portion of the events at issue occurred in this District.

1

## PARTIES

5. Plaintiff is a natural person residing in the City of Clarksville, Montgomery County, State of Tennessee.

6. Plaintiff is a consumer as that term is defined by the FDCPA.

7. Defendant is a debt collector as that term is defined by the FDCPA.

8. Within the last year, Defendant attempted to collect a consumer debt from Plaintiff.

9. Defendant is a collection agency with a principal place of business in the City of Dallas, Dallas County, State of Texas.

10. Defendant conducts business in the State of Tennessee.

11. Defendant's business includes, but is not limited to, collecting on unpaid, outstanding account balances.

12. When an unpaid, outstanding account is placed with Defendant it is assigned a file number.

13. The principal purpose of Defendant's business is the collection of debts allegedly owed to third parties.

14. Defendant regularly collects, or attempts to collect, debts allegedly owed to third parties.

15. During the course of its attempts to collect debts allegedly owed to third parties, Defendant sends to alleged debtors bills, statements, and/or other correspondence, via the mail and/or electronic mail, and initiates contact with alleged debtors via various means of telecommunication, such as by telephone and facsimile.

16. Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

2

## FACTUAL ALLEGATIONS

17. Defendant is attempting to collect alleged consumer debts from Plaintiff originating with several different creditors.

18. The alleged debts at issue arise from transactions for personal, family, and household purposes.

19. In or around April 2019, Plaintiff settled her account with creditor, Total Lending, in the amount of $1,000.18. Her account was #594189350. Her reference number was WP2404-942.

20. On or about April 25, 2019, Plaintiff received a paid letter from WPG Consultants stating that her account with Total Lending had been settled in full.

21. In or around September 2021, Defendant began placing calls to Plaintiff on Plaintiff's telephone at 727-249-9275, in an attempt to collect the alleged debt.

22. Following this paid letter, Plaintiff has had no contact with Defendant or in regard to her loan from Total Lending until Defendant contacted Plaintiff again in an attempt to collect on the same debt. (*See* ¶ 28-31)

23. Defendant calls Plaintiff from 346-318-1980, which is one of Defendant's telephone numbers.

24. On or about September 8, 2021, Plaintiff answered Defendant's call and spoke with one of the Defendant's collectors.

25. During the immediately above-referenced conversation, Plaintiff paid Defendant $683.00, and received Confirmation number 9365482.

26. The above alleged debt payment was for Advance America.

27. Shortly after, Plaintiff received a paid letter from Respondent.

28. On or about November 8, 2021, Plaintiff answered Defendant's call and spoke with one of the Defendant's collectors.

29. During the immediately above-referenced conversation, Plaintiff paid Defendant $451.23, and received confirmation number 126019-3.

30. Defendant should not have attempted to coerce payment as Plaintiff had already paid this debt initially on or about April 25, 2019. As a result, Plaintiff's payment of $451.23 was her second payment on the same debt.

31. The above alleged debt payment was for Total Lending.

32. Plaintiff requested a paid letter multiple times; however, Defendant did not provide one.

33. On or about November 9, 2021, Plaintiff answered Defendant's call and spoke with one of the Defendant's male collectors, Jason Burke ("Jason Burke").

34. During the immediately above-referenced conversation:

    a. Jason Burke stated this was Plaintiff's final outstanding issue.

    b. Jason Burke told Plaintiff she could settled this alleged debt for $500.00.

    c. Plaintiff paid Defendant $500.00 and received confirmation numbers 280859 & 174359.

    d. Plaintiff requested a paid letter from Defendant.

    e. Defendant did not provide one.

35. To date, Plaintiff has requested a paid letter from Defendant for the above-referenced payment multiple times to no avail.

36. On or about November 29, 2021, Plaintiff answered Defendant's call and spoke with one of the Defendant's male collectors, Rob Matz ("Rob Matz").

37. During the immediately above-referenced conversation:

4

a. Rob Matz stated another alleged debt popped up.

b. Rob Matz told Plaintiff if she does not resolve the issue that day, he would be garnishing her wages.

c. Plaintiff, in fear of her wages being garnished, agreed to settling the alleged debt for $701.00.

d. Plaintiff set up the following payment plan:

i. $125.00 on November 29, 2021;

ii. $288.00 on December 10, 2021; and

iii. $288.00 on December 21, 2021.

38. Plaintiff made all the planned payments, receiving confirmation number B1539 and requested a paid letter.

39. Defendant did not provide Plaintiff with a paid letter.

40. On or about December 20, 2021, Plaintiff answered Defendant's call and spoke with Jason Burke.

41. During the immediately above-referenced conversation, Plaintiff paid Defendant $240.00 and received confirmation number A13674.

42. Plaintiff, once again, requested a paid letter from Defendant.

43. Defendant, once again, did not provide Plaintiff with a paid letter.

44. On or about January 7, 2022, Plaintiff answered Defendant's call and spoke with Jason Burke.

45. During the immediately above-referenced conversation, Plaintiff paid Defendant $350.00 and received confirmation number A196179.

46. Plaintiff, once again, requested a paid letter from Defendant.

5

47. Defendant, once again, did not provide Plaintiff with a paid letter.

48. On or about February 2, 2022, Plaintiff answered Defendant's call and spoke with Jason Burke.

49. During the immediately above-referenced conversation:

   a. Plaintiff paid Defendant $380.00 and received confirmation number 704723-3.

   b. Plaintiff did not request to be enrolled in Defendant's cease-and-desist program;

   c. Jason Burke informed Plaintiff that she was being enrolled in a cease-and-desist program despite her non-request;

50. Plaintiff, once again, requested a paid letter from Defendant.

51. Defendant, once again, did not provide Plaintiff with a paid letter.

52. On or about February 24, 2022, Plaintiff answered Defendant's call and spoke with Rob Matz.

53. During the immediately above-referenced conversation:

   a. Rob Matz told Plaintiff he had a notice of garnishment.

   b. Rob Matz then transferred Plaintiff to Jason Burke.

   c. Plaintiff paid Jason Burke $390.00 and received confirmation number 147203.

54. The above alleged debt payment was for Ace Cash Express.

55. Plaintiff, once again, requested a paid letter from Defendant.

56. Defendant, once again, did not provide Plaintiff with a paid letter.

57. On or about April 11, 2022, Plaintiff answered Defendant's call and spoke with Jason Burke.

58. During the immediately above-referenced conversation:

   a. Plaintiff paid Defendant's collector $531.00 and received confirmation number

6

206614.

    b. Jason Burke stated he was having trouble confirming Plaintiff's social security number in order to confirm she had no other issues pending.

    c. Jason Burke advised Plaintiff he would call her by the end of that week.

59. The above alleged debt payment was for Western Sky Payday Loan.

60. Plaintiff, once again, requested a paid letter from Defendant.

61. Defendant, once again, did not provide Plaintiff with a paid letter.

62. Jason Burke did not call Plaintiff by the end of that week, nor did he return any of Plaintiff's calls.

63. Plaintiff attempted to call Jason Burke to confirm there were no other pending issues; however, Jason Burke would not answer her calls.

64. On or about April 21, 2022, Plaintiff answered Defendant's call and spoke with Jason Burke.

65. During the immediately above-referenced conversation:

    a. Plaintiff paid Jason Burke $490.00 and received confirmation number 114007.

    b. Jason Burke told Plaintiff he had run an all-state search and confirmed there were no other pending issues.

66. The above alleged debt payment was for Payday4UNow.

67. Plaintiff, once again, requested a paid letter from Defendant.

68. Defendant, once again, did not provide Plaintiff with a paid letter.

69. On or about May 5, 2022, Plaintiff answered Defendant's call and spoke with Jason Burke.

70. During the immediately above-referenced conversation Plaintiff paid Defendant's

collector $560.18 and received confirmation number 48139.

71. The above alleged debt payment was for Lend Nation.

72. Plaintiff, once again, requested a paid letter from Defendant.

73. Defendant, once again, did not provide Plaintiff with a paid letter.

74. In or around September 2022, Defendant's collector, Jason Burke, called Plaintiff on three separate occasions in an attempt to collect the debt. Following these calls, Claimant paid Defendant $682.45.

75. On or about September 8, 2022, Defendant sent Plaintiff a paid letter reflecting that Plaintiff paid the amount of $682.45 on September 8, 2022. In this letter:

   a. Defendant noted the creditor was Advance America, for account xxx-xx-9350/37409450;

   b. Defendant stated the letter "serves as written verification that the above-referenced debt has been paid and this matter is considered closed."

76. On or about November 29, 2022, Plaintiff answered Defendant's call and spoke with one of the Defendant's female collectors, Samantha Felix ("Samantha Felix").

77. During the immediately above-referenced conversation:

   a. Plaintiff paid Samantha Felix $1,105.00. This amount included attorney fees. Plaintiff received confirmation number A147016.

   b. Samantha informed Plaintiff that "this was the last pending issue."

78. The above alleged debt payment was for Plain Green.

79. Plaintiff, once again, requested a paid letter from Defendant.

80. Defendant, once again, did not provide Plaintiff with a paid letter.

81. On or about December 29, 2022, Plaintiff answered Defendant's call and spoke with one

8

of the Defendant's female collectors, Rachel Miller.

82. During the immediately above-referenced conversation:

    a. Plaintiff set up the following payment plan:

        i. $291.00.00 on December 29, 2022; and

        ii. $291.00 on January 31, 2023.

83. Plaintiff made all the planned payments, receiving confirmation number 607856-P and requested a paid letter.

84. Defendant did not provide Plaintiff with a paid letter.

85. On or about March 9, 2023, Plaintiff answered Defendant's call and spoke with one of the Defendant's female collectors, "Kelly".

86. During the immediately above-referenced conversation, Plaintiff paid Defendant $790.82.00, and received authorization number 926515 and court release number CRT90815TN.

87. The above alleged debt payment was for Approved Money.

88. Shortly after, Plaintiff received a paid letter from Respondent.

89. On or about June 27, 2023, Plaintiff received the following text messages from Defendant:

    a. "Alliance Capital 2236 Circle Nw Tallahassee, FL 32308 Final!!!! Re: Naomi Teare. Please be advised that we have emailed you advising your payday loan is settled in full. Unfortunately, we have tried to close your case and was alerted by one more case pending against you regarding a bad check and wire fraud. Please contact 469-482-9585 to speak with a legal representative. Beth Hayward Legal Department"

    b. "Alliance Capital 2236 Circle Nw Tallahassee, FL 32308 Final!!!! Re: Naomi Teare Please be advised that we have emailed you advising your payday loan is settled in full. Unfortunately, we have tried to close your case and was alerted by one more case pending against you regarding a bad check and wire fraud. Please contact 469-482-9585 to speak with a legal representative. Beth Hayward Legal

department."

90. Immediately after receiving the above text message, Plaintiff called Defendant and spoke with one of the Defendant's collectors, Beth Hayward.

91. During the immediately above-referenced conversation, Plaintiff paid Defendant's collector $706.00 and received confirmation number K3186.

92. The above alleged debt payment was for Lend Nation.

93. Plaintiff, once again, requested a paid letter from Defendant.

94. Defendant, once again, did not provide Plaintiff with a paid letter.

95. However, shortly after, Plaintiff realized she had already paid this alleged debt.

96. Plaintiff called Defendant multiple times for a refund; however, Defendant would not answer her calls.

97. On or about August 15, 2023, Plaintiff received the following text message from Defendant:

   a. "Alliance Capital 2236 Capital Cir NE Suite 103 Tallahassee, FL 32308. Naomi Teare. Please be advised a complaint for fraud of a financial institution and theft of goods and services will be filed against you in County Court, along with a notice of garnishment transaction to verify your wages based on SS#. Please contact a legal representative before a decision is made and finalized with or without your consent within 24 hours. (469) 482-958. Good day. Mark Jankowski, Director of Operations."

98. Immediately after receiving the above text message, Plaintiff called Defendant and spoke with one of the Defendant's male collectors, Mark Jankowski ("Mark Jankowski").

99. During the immediately above-referenced conversation:

   a. Mark Jankowski told Plaintiff there were two more pending issues.

   b. Mark Jankowski threatened to garnish Plaintiff's wages if she did not resolve them today.

10

c. Plaintiff, fearing her wages would be garnished, agreed to consolidate the alleged debts.

d. The consolidated debt amount that was discussed and authorized was in the amount of $1,200.00.

e. Plaintiff paid $1,200.00 and received confirmed number A166354.

100. However, shortly after, Plaintiff realized Defendant charged her card $1,300.00.

101. The above alleged debt payments were for Advance Cash Payday Loan and Action Advance.

102. When Plaintiff inquired about why she was charged $1,300.00 instead of the agreed upon $1,200.00, Jason Burke told Plaintiff the additional $100.00 charged to her card was "probably for attorneys fees" but that Plaintiff "had to pay it."

103. Plaintiff, once again, requested a paid letter from Defendant.

104. Defendant, once again, did not provide Plaintiff with a paid letter.

105. On or about August 17, 2023, Plaintiff answered Defendant's call and spoke with Jason Burke.

106. During the immediately above-referenced conversation:

a. Plaintiff paid Jason Burke a total of $1,501.75 and received confirmation number A1404768.

b. Jason Burke stated he would be placing Plaintiff's name and social security on a block list in order to stop future calls.

107. The above alleged debt payment was for North Star Advance.

108. On or about August 22, 2023, Defendant left the following voicemail on Plaintiff's telephone:

11

a. "Yes, hi. Ms. Naomi Teare. This is Marshall Thomas. I've been retained through the county; I need to serve you a summons. So, this is the thing, it's either going to be at your place of employment or it's going to be at a physical address. So, I have a "unit 431". Now, I just always inform people that this is a summons. You do have a legal right. I was up the hill eating breakfast at this McDonald's. If I receive a cease and desist, hey, you're all set, 'cause you got a legal right. I see you haven't been through this before. What I would've to do, if I come to the place of employment, you have to have two valid forms of state ID. I need a supervisor as a witness. It just makes the process go even smoother, but it states here, I see where it says pre-legal, contact this number and if not, I'll head over that way. (346) 318-1980. Let them know Marshall Thomas is coming by to serve you the documents and I'll head right back. All right, thank you, ma'am."

109. On or about August 22, 2023, Plaintiff called Defendant and spoke with Rob Matz.

110. During the immediately above-referenced conversation:

a. Rob Matz falsely represented he had a notice of garnishment to serve.

b. Rob Matz stated he wanted to give Plaintiff an opportunity to resolve the alleged debt since she had done so in the past.

c. Plaintiff and Rob Matz discussed settling the loan for $901.00.

d. Plaintiff paid Rob Matz a total of $901.00 and received confirmation number M75202.

111. The above alleged debt payment was for Payday Now.

112. On or about August 23, 2023, Plaintiff noticed she was charged an additional $100.00.

113. On or about August 23, 2023, Plaintiff called Defendant and spoke with Jason Burke. In this conversation, Jason advised Plaintiff the additional $100.00 was "probably attorneys' fees" but that "she had to pay it."

114. On or about August 23, 2023, Defendant made multiple unauthorized payments from Plaintiff's account, causing her account to overdraft and accumulate overdraft fees.

115. On or about August 24, 2023, Plaintiff received a paid letter for her August 17, 2023,

12

payment to creditor, North Star Advance. However, the letter Plaintiff received reflected the creditor as "PayDay Now" despite Plaintiff making payment to creditor North Star Advance.

116. Shortly thereafter, Plaintiff inquired with Jason Burke about the discrepancy of the listed creditor. In this conversation, Jason Burke informed Plaintiff he would have an attorney "look into it" and that he would "get back" to Plaintiff.

117. To date, Jason Burke has not explained the discrepancy to Plaintiff.

118. On or about August 24, 2023, Plaintiff called Defendant and spoke to one of Defendant's female collectors, "Brenda".

119. During the immediately above-referenced conversation, Defendant's female collector, "Brenda", advised Plaintiff to call her bank and request a chargeback.

120. Plaintiff called her bank, GTE, and filed the following claims:

   a. Claim number 150424 for unauthorized charge in the amount of of $500.00; and

   b. Claim number 150423 for the unauthorized charge in the amount of $2.00, $500.00, and $1,000.00.

121. On that same day, Plaintiff answered a call from Defendant and spoke to Jason Burke.

122. During the immediately above-referenced conversation:

   a. Jason Burke stated that Defendant's female "Brenda" should not have advised Plaintiff to call her bank and request a charge back.

   b. Plaintiff inquired as to why Defendant charged her account with the unauthorized charges.

   c. Jason Burke could not provide an explanation.

   d. Furthermore, Jason Burke told Plaintiff she had a pending alleged debt of

$900.00.

e. Plaintiff stated she did not have the funds to pay the alleged debt.

f. Jason Burke stated he would place Plaintiff's account on hold until September 1, 2023.

123. On or about August 25, 2023, Defendant, without Plaintiff's authorization, withdrew three (3) separate amounts from Plaintiff's bank account, totaling $1,200.00. The unauthorized withdrawals were in the amounts of:

a. $100.00;

b. $600.00; and

c. $500.00.

124. On or about August 25, 2023, Plaintiff called Defendant and left a voicemail inquiring about the three (3) above-referenced unauthorized charges.

125. That same day, Plaintiff called her bank, GTE, and filed a claim for all three unauthorized charges. Her claim was assigned Claim Number 150509.

126. Plaintiff additionally requested that her bank, GTE, cancel her card, as to avoid Defendant making additional unauthorized withdrawals.

127. On or about August 25, 2023, Plaintiff called Defendant and spoke Jason Burke.

128. During the immediately above conversation:

a. Plaintiff asked Jason Burke for explanations regarding her August 24, 2023, paid letter that reflected "PayDay Now" as her creditor when it should have reflected "North Star Advance" and the six (6) unauthorized withdrawals.

b. Plaintiff inquired about the three (3) unauthorized withdrawals that took place on August 24, 2023, and three (3) unauthorized withdrawals that took place on

14

August 25, 2023. At this time, the unauthorized withdrawals totaled $3,200.00.

 c. Jason Burke stated, "he would have the attorneys look into it and call Plaintiff back."

 d. Defendant further stated that her paid letter reflected a different creditor name as "the debts were sold".

 e. Plaintiff, in response, requested paid letters for all the payments she had made to date.

129. To date, Defendant's collector has not called her to provide an explanation for the incorrect creditor name or the unauthorized charges.

130. On or about August 25, 2023, Defendant sent Plaintiff a paid letter reflecting that Plaintiff paid the amount of $500.00 on August 21, 2023. In this letter:

 a. Defendant noted the creditor was Plain Green, for account xxx-334-070;

 b. Defendant stated the letter "serves as written verification that the above-referenced debt has been paid and this matter is considered closed."

131. However, Plaintiff did not authorize this payment.

132. Furthermore, Plaintiff already paid this alleged debt on November 29, 2022, confirmation number A147016.

133. To date, Plaintiff has not received a refund from all of Defendant's unauthorized charges.

134. On or about August 28, 2023, Defendant sent Plaintiff a paid letter reflecting that Plaintiff paid the amount of $1,000.00 on August 28, 2023. In this letter:

 a. Defendant noted the creditor was PayDay Now, for account xxx-444-638;

 b. Defendant stated the letter "serves as written verification that the above-

referenced debt has been paid and this matter is considered closed." The August 28, paid letter does not reflect the fact that the $1,000.00 was an unauthorized payment. Plaintiff only authorized a payment of $901.00 to be withdrawn towards her alleged debt with PayDay Now. The August 28, 2023 paid letter also incorrectly listed the paid date as "August 28, 2023" when Plaintiff actually remitted payment on August 22, 2023.

135. On or about September 6, 2023, Defendant sent Plaintiff a paid letter reflecting that Plaintiff paid the amount of $2,300.00 on September 5, 2023. In this letter:

a. Defendant noted the creditor as Summit Group, for account xxx-098-778;

b. Defendant stated the letter "serves as written verification that the above-referenced debt has been paid and this matter is considered closed."

136. The September 6, 2023, paid letter does not reflect the fact that the $2,300.00 was an unauthorized payment. Plaintiff never spoke with anyone regarding who the creditor was nor the amount to be paid.

137. On or about September 6, 2023, Plaintiff's attorney mailed and emailed a cease-and-desist letter along with a notice of representation to Defendant.

138. Despite Plaintiff sending Defendant this letter, Defendant has continued to call Plaintiff unabated.

139. On or about September 7, 2023, Defendant sent Plaintiff a paid letter reflecting that Plaintiff paid the amount of $1,500.00 on September 6, 2023. In this letter:

a. Defendant noted the creditor was Everest PayDay Loan, for account xxx-111-766;

b. Defendant stated the letter "serves as written verification that the above-

16

referenced debt has been paid and this matter is considered closed."

140. The September 7, 2023, paid letter does not reflect the fact that the $1,500.00 was an unauthorized payment. Plaintiff never spoke with anyone regarding who the creditor was nor the amount to be paid.

141. On or about September 8, 2023, Defendant charged $500.00 on Plaintiff's bank credit card without Plaintiff's authorization.

142. As a result of above-mentioned unauthorized charge, Plaintiff filed a claim with her bank, GTE, and received claim number 151965. Plaintiff also requested her bank, GTE, to cancel her current bank credit card in an effort to prevent Defendant from continuously charging her bank credit card without her authorization.

143. On or about September 14, 2023, Defendant sent Plaintiff a paid letter reflecting that Plaintiff paid the amount of $2,101.17 on September 14, 2023. In this letter:

   a. Defendant noted the creditor was Cash Express, for account xxx-168-587;

   b. Defendant stated the letter "serves as written verification that the above-referenced debt has been paid and this matter is considered closed."

144. The September 14, 2023, paid letter does not reflect the fact that the $2,101.17 was an unauthorized payment. Plaintiff never spoke with anyone regarding who the creditor was nor the amount to be paid.

145. Following the receipt of September 14, 2023 paid letter, Plaintiff reviewed all the unauthorized charges on her card and found the following:

   a. On or about September 5, 2023, a total of $1,800.00 was charged in two payments of $800.00 and $1,000.00;

   b. On or about September 6, 2023, a total of $1,500.00 was charged in two

17

payments of $700.00 and $800.00;

    c. On or about September 7, 2023, a total of $2,000.00 was charged in two payments of $1,000.00 and $1,000.00;

    d. On or about September 8, 2023, a total of $1,500.00 was charged;

    e. On or about September 11, 2023, a total of $1,501.75 was charged;

    f. On or about September 12, 2023, a total of $2,000.00 was charged;

    g. On or about September 13, 2023, a total of $2,000.00 was charged;

    h. On or about September 14, 2023, a total of $2,101.17 was charged;

146. The total amount of unauthorized charges totals $14,402.92.

147. On or about September 14, 2023, Plaintiff disputed these charges and filed a claim. She also requested her card be canceled in an effort to prevent Defendant from continuously charging her card without her authorization.

148. On or about September 21, 2023, Defendant called Plaintiff three (3) times in one day.

149. That same day, Defendant left the following voicemail on Plaintiff's telephone:

    a. Good afternoon. This is Mark Jankowski leaving a message to get ahold of Ms. Naomi Teare. Naomi, reaching back out to you here from the attorney's office at Wright and Payne. I had a few questions in regards to some documentations I did receive recently in my office. I need to speak with you briefly in regards to them. Once you receive my message, please make it a priority to contact me back in the office today. Again, you can ask for myself directly, Mark Jankowski. Today is September 21st, 2023, and you have been notified. Good day."

150. Following the above-mentioned voicemail, Defendant called Plaintiff again another two (2) times, totaling five (5) calls in one day.

151. On or about September 22, 2023, Defendant called Plaintiff four (4) times despite Plaintiff's counsel sending Defendant a cease-and-desist.

18

152. On the same day, Defendant contacts Plaintiff via text message with the following message:

   a. "Naomi Teare. 3193 Fort Campbell Blvd Unit 431 Clarksville, TN 37042. Dear Naomi Teare, Congratulations on your recent enrollment into your (TITLE 2/2 DBT RELEIF C&D program). You have completed the necessary documents and arrangement(s) agreed to place your secure credentials ending in "9350" to a protective status from processing any CIVIL JUDGMENT and/or WAGE GARNISHMENTS into your county courtroom setting. To complete the final steps of placing the stop order of attorney fee's and/or court cost into effect holding the affidavit or service at your physical place of employment or residing home address contact your legal representative assigned to your litigation file at (469) 462-9585 today. Thank you, Anthony Martenelli Chief of Operations."

153. On or about September 25, 2023, Defendant's collector, Mark Jankowski called Plaintiff at least four (4) times and left at least one (1) voicemail message. In the voicemail message, Mark Jankowski states:

   a. "Hi, good morning, this is Mark Jankowski calling you here from the attorney's office, Alliance Capital leaving a message contacting or locating Naomi Teare. Naomi, just have to speak with you in regards to your litigation file that was rectified here in our office. Once you receive my message, please make it a priority to contact me directly in the office today. A phone number that I can be reached at is 469-482-9585. Again, Naomi Teare, this is Mark Jankowski, phone number I can be reached at today is 469-482-9585. Good day and good luck."

154. On the same day, Defendant contacts Plaintiff via text message with the following message:

   a. "Naomi Teare. 3193 Fort Campbell Blvd Unit 431 Clarksville, TN 37042. Dear Naomi Teare, Congratulations on your recent enrollment into your (TITLE 2/2 DBT RELEIF C&D program). You have completed the necessary documents and arrangement(s) agreed to place your secure credentials ending in "9350" to a protective status from processing any CIVIL JUDGMENT and/or WAGE GARNISHMENTS into your county courtroom setting. To complete the final steps of placing the stop order of attorney fee's and/or court cost into effect holding the affidavit or service at your physical place of employment or residing home address contact your legal representative assigned to your litigation file at (469) 462-9585 today. Thank you, Anthony Martenelli Chief of Operations."

19

155. On or about October 3, 2023, Defendant called Plaintiff twice and left a voicemail. In the voicemail, Defendant's collector states:

   a. "Good morning, Naomi. Again, this is Mark Jankowski, calling here from Alliance Capital. Once you receive this message, I need to speak with you in regards to the outstanding claims filed. Looks like you have wrapped up here…last calendar month in our office. Phone number I can be reached at today is 469-482-9585. Again, that phone number is 469-482-9585. Look forward to speaking with you. Good day and good luck."

156. Defendant is or should be familiar with the FDCPA.

157. To date, Defendant has not taken legal action against Plaintiff.

158. Defendant never intended to take legal action against Plaintiff.

159. To date, Defendant has not garnished Plaintiff's wages.

160. Defendant never intended to garnish Plaintiff's wages.

161. Defendant's above-referenced conduct further affected Plaintiff in a personal and individualized way by causing Plaintiff to experience anger, stress, worry, frustration, embarrassment, and emotional distress.

162. Defendant's actions constitute an invasion of Plaintiff's individual privacy and Plaintiff has suffered a concrete and particularized injury to her legally protected interest of her individual privacy.

**DEFENDANT VIOLATED THE FAIR DEBT COLLECTION PRACTICES ACT**

163. Defendant violated the FDCPA based on the following:

   a. Defendant violated § 1692a(2) of the FDCPA by communicating a consumer who is represented by an attorney, when Defendant continued to place calls to Plaintiff after receiving notice that Plaintiff is represented by an attorney with respect to the alleged debt;

20

b. Defendant violated § 1692c(a)(2) of the FDCPA by communicating with the consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt, when Defendant continued to call and text Plaintiff after Plaintiff's attorney notified Defendant, she was represented by an attorney;

c. Defendant violated § 1692d of the FDCPA by engaging in conduct that the natural consequence of which was to harass, oppress, and abuse in connection with the collection of an alleged debt, when Defendant continued to call Plaintiff after Defendant had been notified that Plaintiff was represented by an attorney and to cease all contact, when Defendant threatened to garnish Plaintiff's wages and when Defendant made multiple unauthorized charges to Plaintiff's account;

d. Defendant violated § 1692d(5) of the FDCPA by causing a telephone to ring or engage in any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number, when Defendant continued to call Plaintiff after Defendant had been notified that Plaintiff was represented by an attorney and to cease all contact;

e. Defendant violated § 1692e of the FDCPA by its use of any false, deceptive, or misleading representation or means in connection with the collection of any debt, when Defendant engaged in, at least, the following discrete violations of § 1692e;

f. Defendant violated § 1692e(2)(A) of the FDCPA by falsely representing the character, amount, or legal statute of any debt, when Defendant falsely represented a lawsuit was filed against Plaintiff;

g. Defendant violated § 1692e(4) of the FDCPA by falsely representing that nonpayment of any debt will result in the arrest or imprisonment of any person or

21

the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful, when Defendant threatened to garnish Plaintiff's wages if she did not make payment;

h. Defendant violated § 1692e(5) of the FDCPA by threatening to take action that cannot legally be taken or that is not intended to be taken, when Defendant threatened to take legal action against Plaintiff when Defendant did not intend to take such action against Plaintiff and when Defendant threatened to garnish Plaintiff's wages;

i. Defendant violated § 1692e(10) of the FDCPA by using any false representation or deceptive means to collect or attempt to collect any debt, when Defendant threatened to take legal action against Plaintiff when Defendant did not intend to take such action against Plaintiff and when Defendant threatened to garnish Plaintiff's wages in an effort to coerce Plaintiff into calling Defendant;

j. Defendant violated § 1692e(11) of the FDCPA by failing to disclose that the communication is from a debt collector, with none of the exceptions of this subsection being applicable, when Defendant left several voicemail messages on Plaintiff's telephone and did not disclose that the communication is from a debt collector and/or in an attempt to collect a debt;

k. Defendant violated § 1692(f)(1) of the FDCPA by attempting to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law, when Defendant made multiple unauthorized charges to Plaintiff's account;

22

l.  Defendant violated § 1692(f)(1) of the FDCPA by using unfair or unconscionable means in connection with the collection of an alleged debt, when Defendant engaged in the foregoing conduct; and

m.  Defendant violated § 1692g(b) of the FDCPA by engaging in collection activities and communication during the time period prescribed in § 1692g(a) and (b) that overshadowed or was inconsistent with the disclosure of the consumer's right to dispute the debt, when Defendant continued to attempt to collect the alleged debt from Plaintiff after Plaintiff orally disputed owing the alleged debt; and

WHEREFORE, Plaintiff, NAOMI TEARE, respectfully requests judgment be entered against Defendant, AMERICAN LEGAL RECOVERY, LLC, for the following:

164.  Actual damages, to be determined at trial;

165.  Statutory damages of $1,000.00 pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k;

166.  Costs and reasonable attorneys' fees pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692k; and

167.  Any other relief that this Honorable Court deems appropriate.

RESPECTFULLY SUBMITTED,

December 11, 2023                    By: /s/ William M. Kaludis

William M. Kaludis
BPR # 17433
Shield Law Group
1230 2nd Ave. S.
Nashville, TN 37210
Tel: (615) 742-8020
Fax: (615) 255-6037
bill@shieldlawgroup.com
Attorney for Plaintiff

24